UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-60166-Civ-SCOLA

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.

ACQUINITY INTERACTIVE, LLC, *et al.*,

    Defendants.

**PLAINTIFF FTC'S CONSOLIDATED REPLY IN SUPPORT OF ITS MOTIONS FOR (1) AN ORDER TO SHOW CAUSE WHY ROBERT ZANGRILLO, BRENT LEVISON, AND ELISHA ROTHMAN SHOULD NOT BE HELD IN CONTEMPT AND (2) A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION <u>AGAINST ALL CONTEMPT DEFENDANTS</u>**

Defendants[1] collectively filed five oppositions to the FTC's motions to add new contemnors to this action and to maintain an asset freeze initially entered in *FTC v. On Point Global LLC, et al*. *See* Entity Defs.' Combined Opp. to TRO and Contempt ("Entities Opp."), ECF No. 158; Levison and Rothman's Opp. to Contempt, ECF No. 169; Katz, Levison, and Rothman Opp. to TRO ("Katz Opp."), ECF No. 160; Zangrillo and Dragon Entities Combined Opp. to TRO and Contempt ("Zangrillo Opp."), ECF No. 160; Waltham Technologies LLC Opp. to TRO ("Waltham Opp."), ECF No. 163.  In 81 pages of briefing and dozens of exhibits, none of the Defendants advances any successful arguments against the relief the FTC seeks.  Defendants are in contempt because the Court's 2014 order in this case (ECF No. 132, "Order") was valid, Defendants had notice of it, and they acted in concert to violate it.  Further, the FTC has shown a continued asset freeze is warranted.

## I.     The FTC Has Proven Defendants Had Actual Notice of the Order.

The Defendants invent their own, narrow interpretation of Rule 65(d)'s "actual notice" provision.  They claim the Rule requires that the party have specific knowledge of the language in an order, not of the order's existence.  Zangrillo Opp. at 10-12; Katz Opp. at 12-13.  The cases Defendants cite, *see id*., do not support their contentions.  The language Defendants quote from *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974), and *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 444 (1974), does not describe Rule 65(d)(2)'s notice requirement at all, but rather Rule 65(d)(1)'s specificity requirement.  *Radio Corp. of Am. v. Cable Radio Tube Corp*. discusses a wholly inapposite situation, where the parties reached a consent agreement, but the court did not actually enter it until the plaintiff sought to enforce it; thus, the parties' knowledge was not at issue.  66 F.2d 778, 779-782 (2d Cir. 1933).  *Lovell v. Evergreen Res., Inc*. simply recites Rule 65(d)'s notice requirement, with no discussion of its interpretation, holding merely that a party who signed a stipulated order had the required notice.  1995 WL 761269, at

---

[1] The FTC refers to Burton Katz, Brent Levison, Elisha Rothman, Robert Zangrillo, and the entities named in the original show-cause order, *Acquinity* ECF No. 136, as "Defendants."  The FTC files this consolidated Reply to all of the oppositions referenced above.  Because the arguments advanced in Rothman and Levison's opposition to the FTC's contempt motion are the same as those in Katz, Rothman, and Levison's opposition to the FTC's TRO motion, the FTC cites here only to those defendants' opposition to the TRO motion.  "PX[#]" refers to exhibits the FTC has previously filed on this docket, *see* ECF Nos. 135, 140/144.  "*Acquinity* ECF No. [#]" or "ECF No." refers to documents filed on this docket; "*On Point* ECF [#]" refers to documents filed in related case *FTC v. On Point Global, LLC, et al*., No. 19-CV-25046-RNS (S.D. Fla.).

*2 (N.D. Cal. Dec. 15, 1995). *Craters & Freighters Franchise Co. v. Benz*, 2018 WL 10911747, at *4 (D. Colo. Feb. 7, 2018); *Walsh v. All. Prop. Servs., Inc.*, 2021 WL 1163197, at *2 (N.D.N.Y. Mar. 26, 2021); and *Blanco GmbH±Co. KG v. Vlanco Indus., LLC*, 992 F. Supp. 2d 1225 (S.D. Fla. 2014) similarly recite Rule 65(d)'s actual notice requirement, contain no discussion of its interpretation, and simply find the plaintiffs in those cases did not present any evidence of actual notice. Finally, *Vuitton et Fils S.A. v. Carousel Handbags* refutes Defendants' contentions, holding that "[Rule 65(d)] codifies the long settled principle that personal service of an injunction is not required so long as those whom the plaintiff seeks to hold in contempt had actual notice ***of the decree***" – not notice of the decree's specific terms or language. 592 F.2d 126, 129 (2d Cir. 1979) (emphasis added).

Defendants' oppositions spend significant time discussing *Sovereign Military Hospitaller Order v. Florida Priory of Knights Hospitallers*, 2019 WL 4731984 (S.D. Fla. July 10, 2019). *See* Katz Opp. at 7, 12; Zangrillo Opp. at 11-12, 14, 22. *Hospitaller* finds a nonparty's knowledge of pre-settlement negotiations did not prove the nonparty had notice an order was later entered. 2019 WL 4731984 at *5-6. In contrast, the FTC presented extensive evidence of the nonparty Defendants' notice of the Order ***after it was entered***. Specifically, Katz admitted having conversations with the Defendants about his settlement and order when the settlement was entered, Zangrillo paid Katz's judgment, and Katz and Zangrillo had post-entry discussions about the "settlement" with the attorney who signed it. PX45 at 2; PX36 107:22-112:14; PX37 279:4-25, 277:7-279:25; PX38 317:1-320:10; PX35 Atts. A, C, E; Order at 4, 17. This case thus does not present the same concerns the *Hospitaller* court voiced – that a nonparty may have known a party was negotiating a possible settlement without knowing a final injunction was entered. 2019 WL 4731984 at *5-6.

As described in the FTC's initial briefs, the "actual notice" standard is less exacting than Defendants claim. *See* TRO Mot., *Acquinity* ECF No. 138, at 17-18. By Rule 65(d)'s terms, the notice standard is the same for parties and nonparties, and "***the order*** binds … those who receive actual ***notice of it***." Fed. R. Civ. P. 65(d) (emphasis added). The Rule requires notice "of it," referencing "the order" rather than the order's specific terms, and requires "notice," not "knowledge." *Cf. In re Military Circle Pet Center No. 94, Inc.*, 181 B.R. 282, 287 (1994) (under UCC, interpreting "notice" as "reason to know from the surrounding facts and circumstances," in contrast to higher "knowledge" standard). Indeed, there is good reason for the decision in *FTC*

2

*v. Neiswonger* holding "[a]ll that is required is knowledge of the mere existence of the injunction; not its precise terms." 494 F.Supp.2d 1067, 1079 (E.D. Mo. 2007); *see also General Motors Corp. v. Gibson Chemical & Oil Corp.*, 627 F. Supp. 678, 6801-82 (E.D.N.Y. 1986). To hold otherwise would improperly permit a person who receives "actual notice" of an order – *i.e.*, awareness that an order exists – to "maintain a studied ignorance of the terms of the decree in order to postpone compliance and preclude a finding of contempt." *United States v. Planes*, 2019 WL 3024895, at *8 (M.D. Fla. July 11, 2019) (quoting *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 646 F.2d 800, 808 (2d Cir. 1981)); *Survivor v. Our Kids of Miami-Dade/Monroe, Inc.*, 2016 WL 950952, at *9 (same); *Clairson Intern. Corp. v. Master Tool Co., Inc.*, 1986 WL 84374, at *2 (S.D. Fla. Feb. 4, 1986) (same); *SE Property Holdings, LLC v. Center*, 2020 WL 5880721, at *3 n.4 (S.D. Ala. Oct. 2, 2020) (same).

      The evidence here, including the Defendants' own admissions, more than prove all Defendants had actual notice of the Order.[2] Katz signed both the Order and, a year later, a report falsely claiming to have complied with it. Order; PX13. Katz admittedly discussed his settlement with each of the other Defendants. PX45 at 2; *see also* PX36 114:25-115:18 ("[G]enerally everybody in my [Katz's] office knew about the order."). The other Defendants admitted knowing that Katz had settled a lawsuit that subjected him to certain restrictions. PX37 279:4-25, 277:7-279:25; PX38 317:1-320:10. Zangrillo paid Katz's judgment, personally transferring the precise amount required in the Order – $704,244 – to Katz's attorneys' escrow account on the deadline to pay the judgment. PX35 Att. A at 1 (bank transfer record: "Transfer Requested By: ROBERT ZANGRILLO"), Order at 4 (judgment amount and deadline). Zangrillo further admits he had a call with Katz and the attorney who negotiated the Order, months after its entry, for the express purpose of discussing any restrictions on Katz's business activities. 277:7-279:25; *see also* PX46 134:1-135:6 (receiver's testimony that Zangrillo told her he was aware of the *Acquinity* Order).[3] Zangrillo even claims he was a sophisticated investor

---

[2] Defendant Levison apparently concedes that he had actual notice of the Order, relying only on his absurd construction of the Order's distribution provision, *infra* at 5, to claim that he nevertheless cannot be subject to it. *See* Katz at Opp. at 12-13 (contesting Rothman's actual notice of the Order but not Levison's).

[3] Zangrillo attempts to distinguish between his admitted knowledge of Katz's "settlement" and professed ignorance of Katz's "order." Zangrillo Opp. at 14. This distinction fails because, in this case, the "settlement" and "order" are one and the same – Katz signed and entered a single Stipulated Final Judgment and Order for Permanent Injunction (Order, ECF No. 132) containing

3

who performed "due diligence" before investing millions of his own money and other investors' money in a company, yet claims that he knew nothing about a permanent injunction that a simple Google search would have turned up. Zangrillo Opp. at 25; PX37 207:3-20, 277:11-280:22. Further, the FTC presented overwhelming evidence of the Defendants' close working relationship, joint efforts to build a deceptive business, and efforts to evade scrutiny by banks, payment processors, and regulators. *See generally* First Contempt Mot. at 3-14, *Acquinity* ECF No. 135 TRO Mot. at 4-13, *Acquinity* ECF No. 138, and exhibits cited. Such strong evidence regarding individuals' relationships, joint ventures, and efforts to evade scrutiny frequently, and properly, forms the basis for a finding that nonparties had actual notice of an order. *E.g., SEC v. Pension Fund of America, LC*, 2006 WL 1104768, at *9, 12 (S.D. Fla. Mar. 8, 2005); *Bunnet & Co., Inc., v. Dores*, 2018 WL 1168860 at *6-7 (W.D. Tex. Mar. 6, 2018); *Hill v. U.S.*, 33 F.2d 489, 491 (8th Cir. 1929).[4]

Some entity defendants now claim they did not have notice of the Order. Waltham Opp. at 2; Zangrillo Opp. at 15. This claim is unavailing because an entity gains notice of an injunction through its on-paper or "*de facto*" officers and managers. *See, e.g.*, *FTC v. Data Medical Capital, Inc.*, 2010 WL 1049977, at *19-20 (C.D. Cal. Jan. 15, 2010); *FTC v. Vocational Guides, Inc.*, 2009 WL 943486, at *15 (M.D. Tenn. Apr. 6, 2009). Katz was the owner and CEO of On Point Global LLC and all its component entities, and he was the managing director and "venture team" member of the Dragon Global entities. PX1 Atts. E at 5, 11-12, 22, 24-25, G at 2, 6, AP; PX12 Att. C. at 115; PX35 Atts. O at 1-2, Q at 1, 14. Further, Zangrillo was the owner and executive chairman of the On Point Global entities, and owner, chairman, and CEO of the Dragon Global entities. PX1 Att. G; PX12 Att. C at 115; PX18 Att. A

---

all the terms of his final agreement, including the injunctive provisions. Further, Zangrillo trumpets Katz's statement that he discussed the "settlement" of the *Acquinity* case but "does not recall discussing the existence of the Order with Mr. Zangrillo," absurdly claiming this affirmatively proves that Zangrillo did not know about the Order. Zangrillo Opp. at 3.

[4] Defendants Zangrillo and Rothman's only "evidence" that they had no notice are their and their co-Defendants' self-serving claims that they knew only that the Order existed but did not understand its terms. Katz Opp. at 12-13.; Zangrillo Opp. at 13. While the Court may find that they had actual notice of the Order without ruling on the credibility of these assertions, as discussed above, the FTC has no doubt that any future fact-finding weighing Defendants' credibility against the evidence in the record will compel the conclusion that Defendants are lying. Further, Defendants do not even attempt to reconcile their contradictory positions that they both knew nothing of the Order and "attempt[ed] with reasonable diligence to comply" with it. Katz Opp. at 13-14; *see also* Zangrillo Opp. at 25 (claim of good faith reliance on counsel).

at 64-135; PX34 Att. D, E at 17-20, 65, F; PX35 Atts. I at 7, R at 8; PX36 20:17-22:5; PX37 19:6-9, 133:10-134:11, 145:25-146:3. Rothman and Levison were On Point Global's owners and officers. PX12 Att. C at 115; PX36 95:9-13; PX41 at 4; PX42 at 4. Thus, the individuals' notice of the Order is attributable to all of the entities named in the first order to show cause.

Finally, Rothman and Levison argue that the Order provision requiring Katz to distribute copies of the Order limits which parties are subject to Rule 65(d). Katz Opp. at 11. First, no order could abrogate Rule 65(d), particularly where the very language Defendants seek to read out specifically tracks Rule 65(d). *See Regal Knitwear v. NLRB*, 324 U.S. 9, 15 (1945) (whether a nonparty is bound by an order "depends on an appraisal of his relations and behavior and not upon mere construction of terms of the order"); *compare* Order at 3 (binding Defendants and specified nonparties with notice) *with* Fed. R. Civ. P. 65(d)(2) (same). Second, Defendants invert the plain language of Section VII, which required Katz to deliver a copy of the Order to any of his business' principals, officers, directors, and LLC managers and members," among others Order at 8. Katz was undisputedly the CEO of On Point Global LLC; Levison, Rothman, and Zangrillo were undisputedly On Point's principals, agents, LLC members, and employees; and Katz admits he did not deliver copies of the Order to them. Katz's own contempt of Section VII of the Order does not somehow excuse Rothman's and Levison's contempt of Section II of the Order. Preventing such a circumvention of a court order's purpose is the very reason courts require only notice of an order, not knowledge of its contents. *Supra* at 2-3.

**II.     The FTC Has Proven Defendants Violated the Order.**

Defendants argue the FTC must show the contemnors had the "intent to participate in the violative conduct," Zangrillo Opp. at 22, or "had or should have had knowledge" of the violations, Katz Opp. at 13. This is contrary to well-settled Supreme Court law that "[t]he absence of wilfulness does not relieve from civil contempt. … Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); *see also FTC v. Leshin*, 618 F.3d 1221, 1232-33 (11th Cir. 2010) (intent and subjective beliefs of contemnors are not relevant). Indeed, the cases Defendants cite for their concocted "intent" requirement rest on wholly different grounds. Katz, Rothman, and Levison cite a case that had nothing to do with contempt, instead describing the standard for individual liability under the FTC Act. Katz Opp. at 12 (citing *FTC v. Moses*, 913 F.3d 297, 307 (2d Cir. 2019)). Zangrillo cites a case that held only that "it has not been

established that the [party accused of contempt] was the entity responsible for the [violation], or had any control over the materials the [nonparty] chose to display or the signage it chose to use." *Hospitaller*, 2019 WL 4731984 at *6-7; *see* Zangrillo Opp. at 22. In that case, the connections between the party-defendant and the nonparty who allegedly carried out the contumacious acts were so tenuous that the plaintiff did not even seek to hold the nonparty liable. *Id*.

By contrast, in this case, party defendant Katz and his aiders and abettors, Zangrillo, Rothman, Levison, and their entities, are liable for the contumacious acts they jointly carried out. As detailed in the FTC's previous motions, overwhelming evidence proves the Defendants jointly hatched and operated the deceptive business at issue. First Contempt Mot. at 3-14, *Acquinity* ECF No. 135 (discussing Defendants' deceptive websites and Katz's role); TRO Mot. at 4-13, *Acquinity* ECF No. 138 (discussing other individuals' roles). The four individuals founded and were the principal owners of the business; each held voting rights to control the company's actions, and Katz and Zangrillo held special approval rights as the business' CEO and Chairman; and all four participated directly in the business' operations, from obtaining merchant and bank accounts to purchasing domain names to hiring and directing its employees. *See generally id*. and exhibits cited. The Defendants are thus wholly unlike either the nonparty or the party in *Hospitaller*, in which there was no evidence the entities acted together or even knew of each others' activities. *Hospitaller*, 2019 WL 4731984 at *6-7.

Defendants seek to downplay their contumacious behavior by arguing they did not themselves write the deceptive website copy and thus cannot be liable. Katz Opp. at 13-14; Zangrillo Opp. at 22-23. This absurd standard – for which, notably, Defendants cite no support, *see id*. – would render all court orders nullities because anyone seeking to evade them could simply hire others to carry out their violations. Of course, this is not the law. *See Regal Knitwear*, 324 U.S. at 19 (noting that "defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors"). Further, Defendants ignore the fact that the Order explicitly prohibits "making, *or assisting others in making*," misrepresentations. Order at 3 (emphasis added).

    **III.    Defendants' Arguments Against the Order's Validity Fail.**

First, Defendants claim the Order's prohibition against misrepresentations is an impermissibly vague "obey-the-law" injunction. Katz Opp. at 8-9; Zangrillo Opp. at 20-21;

Entities Opp. at 5-8.[5] However, injunctions that track statutory requirements are not prohibited in the Eleventh Circuit, as Defendants claim. Instead, as even the case upon which Defendants rely recognizes, "a broad, but properly drafted injunction, which largely uses the statutory or regulatory language may satisfy the specificity requirement of Rule 65(d) so long as it clearly lets the defendant know what he is ordered to do or not do." *SEC v. Goble*, 682 F.3d 934, 952 (11th Cir. 2012); *see also FTC v. Nat'l Urological Grp.*, 786 Fed. App'x 947, 956 n.3 (11th Cir. 2019) ("But, aside from concerns about clarity, there is nothing inherently wrong with an injunction that instructs a party to comply with a specific law.") An injunction may fail this test if it "merely cross-reference[s] the relevant statutes and regulations," *id.*, but that is not the case here.

In this case, the relevant injunctive provision does not "merely cross-reference" any statutes or regulations. Order at 3. Instead, it prohibits Defendants from, "in connection with the advertising, marketing, promotion, offering for sale, sale, or distribution of any product or service … making, or assisting others in making, expressly or by implication, any false or misleading material representation, including representations concerning the cost, performance, efficacy, nature, characteristics, benefits, or safety of any product or service, or concerning any consumer's obligation to pay for charges for any product or service." *Id*. This language is far more specific even than the language of the FTC Act, which states simply that "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. § 45(a)(1). Defendants cannot reasonably argue that a prohibition on making false or misleading material misrepresentations is too vague to understand.

Next, Defendants claim enforcement of the Order's plain terms – applicable to "any product or service," not limited to telephone billing – renders it insufficiently specific. Order at 3; Katz Opp. at 9; Entities Opp. at 7-8; Zangrillo Opp. at 20. This is merely a roundabout attack on the validity of fencing-in relief, or relief that prohibits a practice in all its forms, which the Supreme Court has repeatedly held is appropriate. *E.g.*, *FTC v. Colgate-Palmolive Co.*, 380 U.S.

---

[5] It is unclear why the Receiver's counsel, representing the entity defendants, files an opposition to entry of an order to show cause against the individuals, as the Court already issued such an order against the entity defendants over a year ago and the FTC's current motions would not change the entities' status as contemnors or receivership entities. Order to Show Cause, *Acquinity* ECF No. 136; *see* Entities Opp.

374, 394 (1965) ("Finally, we find no defect in the provision of the order which prohibits respondents from engaging in similar practices with respect to 'any product' they advertise."); *FTC v. Ruberoid Co.*, 343 U.S. 470, 473 (1952) ("In carrying out this function the Commission is not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past. If the Commission is to attain the objectives Congress envisioned, it cannot be required to confine its road block to the narrow lane the transgressor has traveled; it must be allowed effectively to close all roads to the prohibited goal, so that its order may not be by-passed with impunity.").

Defendants attempt to narrow this clear law by claiming that the "similar practice[]" or "illegal practice" involved in the original suit was only telephone billing, and thus all provisions of the Order can apply only in that field. Order at 3; Katz Opp. at 9; Entities Opp. at 7-8. In fact, one of the "illegal practices" the initial suit addressed was Defendant Katz's misrepresentations to consumers. *Acquinity*, Amended Compl., ECF No. 88 at 18-19 (Counts I and II allege deceptive misrepresentations). The Supreme Court has explained why the Defendants' narrow theory of order interpretation is improper: "Civil contempt is avoided today by showing that the specific plan adopted by respondents was not enjoined. Hence a new decree is entered enjoining that particular plan. Thereafter the defendants work out a plan that was not specifically enjoined. Immunity is once more obtained because the new plan was not specifically enjoined. And so a whole series of wrongs is perpetrated and a decree of enforcement goes for naught." *McComb*, 336 U.S. at 192-93; *cf. Maggo v. Zeitz*, 333 U.S. 56, 69 (1948) (disapproving of "experimentation with disobedience" to court orders); *see also In re Sanctuary Belize Litig.*, 482 F. Supp. 3d 373, 469 (D. Md. 2020) (explaining entry of similar provision).

Defendants rely on a decision from the Middle District of Florida, *FTC v. Washington Data Resources*, for their argument that the Order is insufficiently specific. Katz Opp. at 8-9; Zangrillo Opp. at 21; Entities Opp. at 7. But this reliance fails because *Washington Data Resources* is both factually distinguishable and based on faulty authority. First, in that case, the court considered whether to enter an injunctive provision over the objections of the defendants. 2012 WL 2075827, at *1. In contrast, Defendant Katz and his counsel negotiated and stipulated to the Order provision at issue,[6] and this Court entered that provision in 2014. Order at 14, 16.

---

[6] Brazenly, Katz's counsel from the original suit now represents him in this contempt action, where Katz argues that the very language he and his attorney negotiated and stipulated to is

8

Further, *Washington Data Resources* cites three bases for its holding: (1) *SEC v. Goble*, whose obey-the-law discussion *Washington Data Resources* misconstrues in the same way as the Defendants, as discussed above; (2) *SEC v. Sky Way Global, LLC*, 710 F.Supp.2d 1274 (M.D.Fla.2010), which was written by the same court and relies on the same infirm reasoning and authority as *Washington Data Resources*; and (3) a footnote in *SEC v. Smyth*, 420 F.3d 1225, 1233 n. 14 (11th Cir.2005). The footnote in *SEC v. Smyth* is pure dicta and contradicted the Eleventh Circuit's prior and later rulings, leading a court in this district to strongly criticize the *Sky Way* and *Washington Data Resources* court for its reliance on *Smyth*: "[A] district court, of course, cannot overrule a panel's holding, either, even where, as in *Sky Way Global*, the district court views the panel's decision as having "inadequately analyze[d]" the issue and as not "merit[ing] adherence.'" *SEC v. Huff*, 758 F. Supp. 2d 1288, 1354 n.25 (S.D. Fla. 2010).[7]

---

impermissibly vague and legally defective. Order at 14 (L. Goldstein representing Katz); PX45 at 1 (Katz's recent compliance report submitted by L. Goldstein).

[7] Likely owing to these problems, no court has ever cited *Washington Data Resources* in finding a "no-misrepresentations" provision impermissibly vague, but court after court – including this one – has entered, upheld, and enforced such provisions. *E.g.*, *FTC v. EDebitPay, LLC*, 695 F.3d 938, 944 (9th Cir. 2012) (finding similar provision sufficiently specific and upholding enforcement); *FTC v. Dayton Family Productions*, 2016 WL 1047353, at *7-8 (D. Nev. Mar. 16, 2016) (finding defendants in contempt of similar provision); *FTC v. Data Medical Capital, Inc.*, 2010 WL 1049977, *25 (C.D. Cal. Jan. 15, 2010) (finding similar provision "clear and definite" and holding defendants in contempt of it); *In re Sanctuary Belize Litig.*, 482 F. Supp. 3d 373, 469 (D. Md. 2020) (discussing and entering similar provision); *see also FTC v. Partners in Health Care Assoc., Inc.*, Case No. 14-cv-23109-RNS, ECF No. 208 at 3-4 (S.D. Fla. June 27, 2016) (Scola, J., entering similar provision after summary judgment); *FTC v. IAB Mktg. Assocs., LP*, No. 12-CV-61830-RNS, ECF No. 193 at 8 (S.D. Fla. Feb. 19, 2013) (Scola, J., entering similar stipulated provision); FTC v. Am. Precious Metals, LLC, No. 11-CV-61072-RNS, ECF No. 300 at 5 (S.D. Fla. Nov. 19, 2012) (Scola, J., entering similar stipulated provision); *FTC v. Pointbreak Media, LLC, et al.*, No. 0:18-cv-61017-CMA, ECF No. 266 at 6-7 (S.D. Fla. Apr. 25, 2019); *FTC v. USA Financial, LLC, et al.*, No. 8:08-cv-00899-EAK-MAP, ECF No. 156 at 6-7 (M.D. Fla. Apr. 5, 2010); *FTC v. HES Merchant Services Company, Inc., et al.*, No. 6:12-cv-1618-ACC-KRS, ECF No. 241 at 9-10 (M.D. Fla. Feb. 11, 2015); *FTC v. LOMA International Business Group Inc., et al.*, No. 1:11-cv-01483-MJG, ECF No. 206 at 3 (D. Md. March 24, 2014); *FTC v. Holiday Vacations Marketing Corp., et al.*, No. 8:11-cv-01319-JFM, ECF No. 34 at 4 (D. Md. March 20, 2012); *FTC v. Adept Management, Inc.,et al.*, No. 1:16-cv-00720-CL, ECF No. 730 at 3-4 (D. Or. June 10, 2019); *FTC v. Consumer Defense, LLC, et al.*, No. 2:18-cv-00030-JCM-BNW ECF No. 320 at 18 (D. Nev. Dec. 5, 2019); *FTC v. Elegant Solutions, Inc.,et al.*, No. 8:19-cv-01333-JVS-KES, ECF No. 191 at 11-12 (C.D. Cal. July 24, 2020); *FTC v. Jeremy Johnson, et al.*, No. 2:10-cv-02203-MMD-GWF, ECF No. 2022 at 11 (D. Nev. Aug. 24, 2017); *FTC v. John Beck Amazing Profits, LLC, et al.*, No. 2:09-cv-4719-JHN-CW, ECF No. 643 at 9-11 (C.D. Cal. Aug. 21, 2012); *FTC v. Kutzner, et al.*, No. 8:16-cv-00999-BRO-AFM,

Finally, Defendants argue that the FTC cannot recover compensatory relief in civil contempt because consumers, not the FTC, were injured by Defendants' conduct. Katz Opp. at 17-18. The Tenth Circuit rejected this argument in *FTC v. Kuykendall* because such a rule would contravene both the purpose of Congress in creating the FTC and the intentions of the parties in entering a permanent injunction. 371 F.3d 745, 753-54 (10th Cir. 2004); *see also Leshin*, 618 F.3d at 1237 (upholding monetary contempt relief granted on FTC's motion because defendants' contempt injured consumers). Further, as the *Kuykendall* court noted, "civil contempt proceedings are 'considered to be a part of the action from which they stem.'" *Id*. at 753 (citations omitted). Only a party to an injunction may seek its enforcement through civil contempt. *See Gompers v. Buck's Stove & Range Co*., 221 U.S. 418, 444-45 (1911); *Blalock v. US*, 844 F.2d 1546, 1550 (11th Cir. 1988) ("[T]here is no such thing as an independent cause of action for civil contempt …."). Defendants' proposed rule would therefore create the perverse outcome that no one could obtain contempt relief in an FTC case, because the FTC would be barred from seeking to compensate injured consumers, and consumers themselves cannot enforce the injunction. Such a rule would render courts' orders nullities and eviscerate the purpose of the FTC Act.

## IV. Contempt Remedies and a Continued Asset Freeze Are Appropriate.

Defendants argue the FTC's contempt and TRO motions are improper because they constitute an "end run" around the Supreme Court's recent ruling on monetary relief under Section 13(b) of the FTC Act. Katz Opp. at 6-7, 15; Zangrillo Opp. at 27; Entities Opp. at 8. Defendants' argument rests on the faulty premise that the Supreme Court's ruling in *AMG Capital Mgmt., LLC v. FTC,* 141 S.Ct. 1341 (2021), concludes that the FTC cannot obtain monetary relief for consumers. In fact, the decision is based solely on the language of Section 13(b) of the Act, a conclusion the Court reached by specifically noting the FTC Act provides other means of obtaining monetary relief. *Id*. at 1352. The FTC acknowledges, as it must, that it cannot now obtain monetary relief under Section 13(b), but continues to seek that relief on legally solid grounds: civil contempt. Such an action to protect the public using the tools that remain at the FTC's disposal is not an "end run" around the Supreme Court's analysis in *AMG,* but completely consistent with it.

Moreover, Defendants ignore the fact that the FTC filed its initial contempt action in

---

ECF No. 360 at 9-10 (C.D. Cal. Sep. 21, 2017).

early 2020, seeking monetary contempt remedies before the Supreme Court even granted certiorari in the *AMG* matter. *First Contempt Mot.*, Acquinity ECF No. 135 (filed Feb. 12, 2020); *AMG Capital Mgmt., LLC v. FTC*, 141 S.Ct. 194 (July 9, 2020) (certiorari granted). Defendants nevertheless cast the FTC's recent addition of nonparty contemnors as "irresponsible overreach." Zangrillo at 8. This contention is completely backwards. As Defendants recognize, evidence that those nonparties had notice of and violated the Order emerged over the past months of discovery, concluding with Defendants' depositions and Katz's second compliance report just weeks before the FTC filed its contempt and TRO motions.[8] A party moving for an order to show cause bears the burden of establishing, with evidence rather than mere allegations, that the contemnors had notice of the injunction and violated it. *See Leshin*, 618 F.3d at 1232. The true "irresponsible overreach" would have been to seek contempt against the recently added parties *before* the FTC uncovered evidence of all the elements of their contempt.[9]

Further, the Eleventh Circuit in *McGregor v. Chierico* did not, as Defendants claim, hold contempt remedies "must" be limited by remedies under the FTC Act.[10] Katz Opp. at 6. In fact, *McGregor* first found "[t]he inherent equitable powers of the federal courts authorize the district court to order payment of consumer redress for injury caused by Michael Chierico's

---

[8] Katz, Rothman, and Levison claim that, "before *AMG*, the FTC specifically informed counsel for Messrs. Levison and Rothman that it would not be pursuing contempt claims against those individuals." This is categorically false; the FTC has always been clear with all parties that, if the developing evidence supported contempt motions against any Defendant, the FTC would seek contempt relief against that Defendant.

[9] Of course, the Commission's motion to maintain the asset freeze in the contempt action would have been unnecessary absent the Supreme Court's ruling in *AMG*. TRO Mot. at 2, *Acquinity* ECF No. 138 (noting need for new TRO/PI basis due to *AMG* ruling). But there is nothing improper in the FTC seeking to maintain the asset freeze on its still-existing grounds for monetary relief. Further, Zangrillo's complaints that the FTC seeks to expand the asset freeze, Zangrillo Opp. at 26, are ill-founded. The FTC seeks only to maintain the existing freeze of the contemnors' assets, not to reach new assets not covered by the initial freeze. *Acquinity* TRO Mot. (ECF No. 138) at 3 (seeking either continuation of existing freeze or entry of identical provisions). The complained-of clause in the proposed freeze order freezing assets "as of the time this Order is entered" is an oversight, drawn directly from the initial freeze order, which was entered on December 13, 2019. TRO, *On Point* ECF No. 12. The FTC agrees that any new asset freeze order should apply to Defendants' assets "as of December 13, 2019," as in the Preliminary Injunction entered previously. *See* Prelim. Inj., *On Point* ECF No. 126 at 6.

[10] As discussed above, and as the Supreme Court recognized in *AMG*, the FTC Act continues to authorize a broad range of monetary relief under Section 19, 15 U.S.C. § 57b, rendering Defendants' concerns moot.

contumacious conduct," then looked to FTC Act jurisprudence as "instructive" for calculating that remedy because – at the time – the two remedies were "closely akin."  206 F.3d 1378, 1387-88 (11th Cir. 2000); *see also Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1519 (11th Cir. 1990) (courts may, but are not required to, reference underlying statute for guidance in calculating compensatory remedy).  The fact that Section 13(b) no longer authorizes monetary relief thus does not foreclose the FTC from obtaining monetary contempt remedies; instead, it remains the law that contempt remedies encompass full remedial relief.  TRO Mot. at 13-15, *Acquinity* ECF No. 138.

Finally, the Defendants argue that a Supreme Court decision about a disgorgement remedy under the SEC Act should limit the asset freeze here and that freezing more than each Defendant individually received in payouts would be "punitive."  Katz Opp. at 18-20, Zangrillo Opp. at 26-29.  First, as this Court has already held, Defendants seek to extend the Supreme Court's decision in *SEC v. Liu* well beyond its bounds – to the "wrong agency, the wrong statute, and the wrong remedy."  Order Denying Stay, *On Point* ECF No. 298 at 6.  Further, in making these arguments, the Defendants again shrug off longstanding Supreme Court law holding "[t]he measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief."  *McComb*, 336 U.S. at 193.  A court fashioning remedial relief has "extremely broad and flexible powers," extending to many types of relief, *FTC v. Leshin (II)*, 719 F.3d 1227, 1231 (11th Cir. 2013), which are "only limited by the requirement that [the relief] be compensatory."  *Howard Johnson*, 892 F.2d at 1521.  Here, the evidence of the amount required to compensate harmed consumers is drawn from Defendants' own records, showing that Defendants took over $80 million directly from consumers victimized by their "paid-guide" sites and sold the personal data from consumers duped by their public benefits sites for more than $17 million.  TRO Mot. at 20, *Acquinity* ECF No. 138.  Because these amounts reflect the "requirements of full remedial relief," it is appropriate to freeze Defendants' assets to preserve the possibility of that relief.

Dated:  May 21, 2021                                         Respectfully submitted,

                                                      */s/ Sarah Waldrop*
                                                    Sarah Waldrop, Special Bar No. A5502583
                                                    (202) 326-3444; swaldrop@ftc.gov
                                                    Sana Chaudhry, Special Bar No. A5502350

(202) 326-2679; schaudhry@ftc.gov
Christopher Erickson, Special Bar No. A5502434
(202) 326-3671; cerickson@ftc.gov
Federal Trade Commission
600 Pennsylvania Ave. NW, CC 9528
Washington, DC 20580
Facsimile: (202) 326-3197
Attorneys for Plaintiff, Federal Trade Commission

## CERTIFICATE OF SERVICE

I hereby certify that, on May 21, 2021, a true and correct copy of the foregoing was served on all counsel of record via CM/ECF.

>                               */s/ Sarah Waldrop*
>                               Sarah Waldrop