United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Federal Trade Commission, Plaintiff ) | |
| ) | |
| v.  ) | Civil Action No. 14-60166-Civ-Scola |
| ) | |
| Acquinity Interactive, LLC, and  ) | |
| others, Defendants  ) | |

## Omnibus Order

This matter is before the Court upon the FTC's motions for a preliminary injunction (ECF No. 138) and for an order to show cause why Robert Zangrillo, Brent Levison, and Elisha Rothman should not be held in contempt. (ECF No. 137.) The Court has reviewed the motions and the relevant legal authorities and **grants** the FTC's motion for a preliminary injunction (**ECF No. 138**) and **grants in part and denies in part** the FTC's motion for an order to show cause (**ECF No. 137**.) The Court also **grants** the FTC's request to set a briefing schedule on summary contempt proceedings. (**ECF No. 170**.)

Before beginning its analysis, the Court notes that the FTC's motion is styled as a motion for a temporary restraining order, but in its briefing, the FTC stated its belief that the Court may enter a preliminary injunction without an evidentiary hearing once the Contempt Defendants, as defined below in this order, have had an opportunity to fully respond to the FTC's motion, including by submitting any evidence or affidavits the Contempt Defendants seek to rely on in connection with responding to the FTC's motion. Contempt Defendants Katz, Levison, and Rothman do not contest the FTC's assertion, but merely state that they "do not concede that the FTC has proven that the websites were deceptive and specifically maintain the arguments made and evidence adduced at the preliminary-injunction hearing" in *FTC v. On Point Global*, 19-25046-Civ (S.D. Fla.) (the "*On Point Matter*"). (ECF No. 160, at 13 n.5.) Conversely, Robert Zangrillo and certain of the Entity Defendants, including Dragon Global LLC, Dragon Global Management LLC, and Dragon Global Holdings LLC argue that the Court "must hold a hearing prior" to granting a preliminary injunction because these respondents state that they "dispute nearly every factual assertion that the FTC makes." (ECF No. 163, at 32.) The Court previously held a two-day evidentiary hearing on the FTC's motion for a Preliminary Injunction in the *On Point Matter*, where the Court found a preliminary injunction was warranted based on the evidence presented to the Court, as further set forth in this order. Because Court has already found the FTC is likely to succeed on the merits in the *On Point Matter* with respect to all of the Contempt Defendants, the Court finds it

does not need additional evidence prior to entry of a preliminary injunction. Rather, the true questions at issue for the Court to decide are whether Katz's settlement with the FTC is enforceable, whether the Contempt Defendants had actual notice of the *Acquinity* order, and whether the FTC satisfies the standard for entry of a preliminary injunction based on contemptuous conduct in the *On Point Matter*. In light of these considerations, the parties' submissions in connection with the FTC's motion, and proceedings in the *On Point Matter*, the Court does not find an evidentiary hearing is necessary before for the Court can enter a preliminary injunction. As such, and because all parties have had an opportunity to respond and submit evidence and affidavits in this matter, the Court construes the FTC's motion as a motion for preliminary injunction.

### 1. Background

In 2014, the FTC settled a lawsuit against Burton Katz and others for his role in a "mobile-billing cramming scheme," which entailed using "unsolicited text messages to lure consumers to fraudulent 'free merchandise websites'" and then requiring those consumers to "provide personal information to qualify for free merchandise that did not exist or was unobtainable." (ECF No. 160, at 2.) The personal information provided by the consumers was also used by the Defendants to identify targets to receive unsolicited pre-recorded phone messages. As part of this scheme, Katz utilized a company "Polling Associates, Inc.," an SMS technology platform, which the Defendants utilized to place a $9.99 recurring charge on consumer's telephone bills. (*Id.* at 3.) The FTC and Katz reached a settlement in October 2014 and Katz agreed he was permanently enjoined from "billing, submitting for billing, or assisting or facilitating the billing or submitting for billing, charges to any telephone bill, including but not limited to a bill for any voice, text, or data service." (ECF No. 132, at 3.) Section II of Katz's settlement with the FTC also noted that he, and any "officers, agent, servants, and employees, and all other persons in active concert or participation . . . who receive actual notice of this Order, whether acting directly or indirectly" are enjoined from, "in connection with the advertising, marketing, promotion, offering for sale, sale, or distribution of any product or service . . . making, or assisting others in making, expressly or by implication, any false or misleading material representation, including representations concerning the cost, performance, efficacy, nature, characteristics, benefits, or safety of any product or service, or concerning any consumer's obligations to pay for charges for any product or service." (*Id.*) The Court entered a Stipulated Final Judgment and Order for Permanent Injunction and Other Equitable Relief as to Burton Katz and others on October 16, 2014. (ECF No. 132.)

On February 12, 2020, the FTC filed a motion in this matter, seeking to show cause why Katz and the Entity Defendants[1] should not be held in contempt for violating the FTC's 2014 settlement. (ECF No. 135.) The FTC noted that Katz was named in another lawsuit, the *On Point Matter*, which alleged that Katz, in concert with the other *On Point Matter* defendants was operating "a sprawling online scheme that deceives consumers into providing money and their personal information . . . by promising a quick and easy government service" such as renewing a license, when in fact, the consumers would only receive "a PDF containing publicly available, general information about the service they sought." (ECF No. 135, at 1.) The Court granted the FTC's motion and stated it would hold a show cause hearing contemporaneously with trial in the *On Point Matter* at which time the Court would determine why Katz and the Entity Defendants should not be held in contempt for violating the settlement. (ECF No. 136.)

The FTC now claims, through discovery in the *On Point Matter*, that they learned certain individual defendants in the *On Point Matter*, Robert Zangrillo, Brent Levison, and Elisha Rothman, were aware of Katz's settlement with the FTC but despite their awareness of the settlement, acted in concert with Katz to violate its terms. Accordingly, the FTC asks the Court to hold a show cause hearing with respect to these individuals as well. The FTC also asks the Court to enter a preliminary injunction and freeze the assets of these individuals, Burton Katz, and the Entity Defendants pending conclusion of these contempt proceedings.

## 2. Legal Standards

### A. Contempt

The Court has authority to enforce its orders through civil contempt. *Shillitani v. United States*, 384 U.S. 364, 370 (1966). Contempt is established where there is clear and convincing evidence that the violated order 1) was valid and lawful; 2) was clear and unambiguous; 3) and where the alleged contemnor had the ability to comply. *FTC v. Leshin*, 618 F.3d 1221, 1232 (11th Cir. 2010). The Court may only enter "an order requiring the [d]efendant to show cause why the defendant should not be held in contempt" if "the court finds that the conduct as alleged would violate the order." *Mercer v. Mitchell*, 908 F.2d 763, 765 (11th Cir. 1990). Pursuant to Federal Rule 65(d)(2), the Court must also find that the individual in question had "actual notice" of the order in question. Fed. R. Civ. P. 65(d)(2).

---

[1] The Entity Defendants are: On Point Global LLC; On Point Employment LLC; On Point Guides LLC f/k/a Rogue Media Services LLC; Dragon Global Holdings LLC; Cambridge Media Series LLC f/k/a License America Media Series LLC; Issue Based Media LLC; DG DMV LLC; Direct Market LLC; and Bronco Family Holdings LP a/k/a Bronco Holdings Family LP.

### B. Preliminary Injunction

"[I]n determining whether to grant a preliminary injunction . . . a district court must 1) determine the likelihood that the FTC will ultimately succeed on the merits and 2) balance the equities." *FTC v. University Health, Inc.*, 938 F.2d 1206, 1217-18 (11th Cir. 1991). To obtain a preliminary injunction, the FTC need not show irreparable harm. *Id.* at 1218. The FTC is also freed "from its burden of" showing "a 'substantial' likelihood of success" as is required by private litigants. *FTC v. Sterling Precious Metals, LLC*, 894 F. Supp. 2d 1378, 1383 (S.D. Fla. 2012) (Marra, J.).

### 3. Analysis

#### A. Contempt Proceedings

The FTC states in its motion that at the time it moved for contempt against Katz, the FTC was not aware that Zangrillo, Levison, and Rothman each had notice of Katz's settlement, but through discovery in the *On Point Matter*, came to learn that each of these individuals had contemporaneous knowledge of the order and acted in concert with Katz to violate it while carrying out the deceptive practices that gave rise to the *On Point Matter*.

Zangrillo, Rothman, and Levison contend the Court should not require them to show cause why they should not be held in contempt because 1) Section II the FTC's settlement with Katz is not clear, definite, unambiguous, valid or enforceable; 2) the FTC has failed to show that these individuals had notice of the order; and 3) in any event, the FTC has failed to show non-compliance.

##### a. The *Acquinity* Settlement

In support of their arguments that they should not be made to show cause, Zangrillo, Levison, and Rothman state that the FTC's order was not clear and unambiguous and that it was not a valid and lawful settlement. Moreover, they state that the order does not describe in sufficient detail the conduct that was to be enjoined in violation of Federal Rule 65. Specifically, these individuals state that they believe the FTC's settlement with Katz is a "quintessential obey the law injunction" which provides little information to Katz or others what conduct is enjoined, instead simply telling them they must obey the law. (ECF No. 159, at 8.)

In response, the FTC acknowledges that an "obey the law" order may be too ambiguous to be enforced, but notes that the Eleventh Circuit has held there is nothing inherently wrong with an injunction instructing individuals to obey the law, and in any event, the FTC claims that the FTC's settlement with Katz required Katz and others affiliated with Katz from doing more than simply obeying the FTC Act. *See FTC v. Nat'l Urological Grp. Inc.*, 786 F. App'x 947, 956 n.3 (11th Cir. 2019) ("an injunction that simply tells a defendant to obey the law can be too

ambiguous. But aside from concerns about clarity, there is nothing inherently wrong with an injunction that instructs a party to comply with a specific law.").

The Court agrees with the FTC that Section II of the FTC's settlement with Katz is not so vague and ambiguous as to be an impermissible obey the law injunction. The FTC Act provides that "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. § 45(a)(1). The FTC's settlement with Katz, however, enjoined Katz and others from "in connection with the advertising, marketing, promotion, offering for sale, sale, or distribution of any product or service . . . making, or assisting others in making, expressly or by implication, any false or misleading material representation, including representations as to the cost, performance, efficacy, nature, characteristics, benefits, or safety of any product or service, or concerning any consumer's obligation to pay for charges for any product or service." (ECF No. 132, at 3.) The settlement, therefore, is more specific than the much broader provision of the FTC Act which makes deceptive acts or practices in commerce unlawful, generally speaking.

Moreover, as the FTC notes in its briefing, fencing-in relief has been approved by the Supreme Court, which allows the FTC to "prohibit[] respondents from engaging in similar practices with respect to 'any product' they advertise." *FTC v. Colgate-Palmolive, Co.*, 380 U.S. 374, 384 (1965). In *Palmolive*, the Supreme Court stated "the propriety of a broad order depends upon the specific circumstances of the case, but the courts will not interfere except where the remedy selected has no reasonable relation to the unlawful practices found to exist." *Id.* at 394-95. Here, the conduct which led to the Katz settlement in *Acquinity* was not so different from the conduct which led the FTC to file its complaint in the *On Point Matter* and therefore has a reasonable relation to the unlawful practices previously found to exist. For instance, both the *Acquinity* action and the *On Point Matter* involved a scheme in which Katz and others fraudulently represented to consumers that products or services were available to them when in fact that was not the case. In the *Acquinity* action, the scheme involved luring consumers to "fraudulent 'free merchandise websites'" requiring the consumers to provide personal information for products that were not available. That information was then utilized to target victims of Katz's "mobile-billing cramming scheme." Similarly, in the *On Point Matter*, Katz and others developed "patently misleading" websites in order to trick consumers into thinking they could easily obtain government services through such websites, when no such government service was provided—all the consumers would receive was a guide that could have been obtained for free elsewhere on government sites. Thus, Section II of the Katz settlement, in addition to not being an "obey the law" injunction, appropriately ring-fences Katz and others from deceiving

consumers into providing them items of value by promising them that certain products are available to them, when in fact that was not the case.

### b. Knowledge of the *Acquinity* Settlement

Next the Court considers whether Zangrillo, Levison, and Rothman had knowledge of the *Acquinity* settlement. Turning first to Levison, in his deposition, Levison admitted that he has seen the *Acquinity* settlement and that he was made aware of it by Katz "when it got resolved or when it got entered into." (Levison Dep., ECF No. 144-13, at 237:14-239:9.) Katz appears to confirm the same in a compliance report he provided in connection with his *Acquinity* settlement. In his report, Katz stated "at or around the time of the entry of the Order," Katz had a verbal communication with Levison "regarding the substance of the Order." (ECF No. 140-19, at 2.) Therefore, the Court finds that Levison had actual notice of the Katz settlement.

Similarly, with regards to Rothman's knowledge of the *Acquinity* settlement, the Court notes that Rothman also had contemporaneous knowledge of Katz's settlement with the FTC. While Rothman claims not to have reviewed the *Acquinity* settlement, he nonetheless states that "around the end of 2014, beginning of 2015" he had a "conversation with Mr. Katz" about his litigation with the FTC. (Levison Dep., ECF No. 144-12, at 317:1-320:10.) In his deposition, Levison states that he was aware Katz had settled with the FTC to resolve the issues being litigated in the *Acquinity* action. *Id.* Moreover, just as with Levison, Katz's compliance report similarly confirms that he had a conversation with Rothman "regarding the substance of the Order." (ECF No. 140-19, at 2.) Therefore, the Court also finds that Rothman had actual notice of the order at issue.

Finally, with respect to Zangrillo, the FTC states that it can be inferred that Zangrillo had notice of Katz's settlement with the FTC because "Zangrillo directly paid Katz's full judgment amount of $704,244 in the *Acquinity* case from his personal account to Katz's law firm's escrow account on the date the judgment was due" and because Zangrillo "participated in at least one call with Linda Goldstein, who represented Katz in the *Acquinity* matter, regarding Katz's settlement with the FTC." (ECF No. 137, at 14.) In response, Zangrillo states that the record developed in the *On Point Matter* is clear that while he did have a call with Mr. Katz's law firm to be sure there "was no pending or legal restrictions that Mr. Katz had that would prohibit" Zangrillo and Katz from doing busines together, Zangrillo states that at no point did he become aware that the "FTC had sued Mr. Katz" and that the extent of his knowledge was that "there was no existing litigation against Mr. Katz"; that "he had no convictions or accusations of any felony"; and that "[h]e had prior civil litigation, not knowing [with] who, and that

there was no restrictions on his ability to serve as an officer or director of a venture backed company." (Zangrillo Dep., ECF No. 144-11, at 278:1-20.) Zangrillo confirmed again in his deposition that he was not aware that Katz had been sued by the FTC and simply knew the civil litigation pertained to "mobile billing and [was] similar to civil litigation that was against Verizon and other mobile phone carriers." (*Id.* at 279:4-18.) Zangrillo further confirmed that he did not inquire about the outcome of the litigation, as he simply wanted to ensure that "there was no restrictions or anything to worry about" and that question had been answered to his satisfaction. (*Id.* at 280:14-23.) Katz, in his deposition, stated that he may have told Zangrillo "about a settlement, but I definitely never showed Mr. Zangrillo the provisions of the order" and when asked if Katz told Zangrillo the settlement was with the FTC, he stated "I believe so. I believe so. I can't affirmatively say yes, but I believe so. I don't know." (Katz Dep., ECF No. 144-10, at 108:11-109:22.) Conflictingly, in Katz's same compliance report, unlike with regards to Rothman and Levison, Katz stated he had "at least one verbal communication . . . regarding the settlement of a civil action" and that Katz "does not recall discussing the existence of the Order" with Zangrillo. (ECF No. 140-19, at 2.)

  It appears then, that Mr. Zangrillo did not receive notice of the Katz's settlement with the FTC as part of his diligence with respect to beginning a business relationship with Katz. Nonetheless, the FTC urges the Court to look to circumstantial evidence to find that Zangrillo was aware of Katz's settlement, namely, the fact that Zangrillo paid the exact amount of Katz's $704,244.00 settlement to Katz's lawyers on the day his payment was due to the FTC. (*See* ECF No. 145, at 3 (showing payment of $704,244.00 at the request of Robert Zangrillo to Katz's attorneys).) Even assuming that the FTC is correct that notice of an injunction can be shown by circumstantial evidence, the Court does not find that the FTC has pointed to circumstantial evidence showing that Zangrillo had notice of Katz's settlement with the FTC. Rather, what the record shows is that Zangrillo conducted a diligence session with Katz's attorneys, received notice that Katz had settled a civil litigation involving mobile billing, and made a payment in an amount that satisfied Katz's settlement with the FTC while Katz was experiencing "liquidity issues." (Katz Dep., ECF No. 144-10, at 99:13-100:12.) This is not enough to support a finding that Zangrillo had actual notice of Katz's settlement to support a potential finding of contempt.

  Finally, Rothman argues, even if he was aware of the existence of Katz's settlement with the FTC, he must be aware "not only that there is an order, but of the terms of the order." (ECF No. 159, at 12.) At the outset, the Court notes that the record appears to support that Rothman did have notice of Katz's settlement, including it terms. As noted above, Rothman had a discussion with Katz about his litigation with the FTC, knew that Katz had settled with the FTC to resolve the

*Acquinity* action, and moreover Katz reported that he discussed "the substance of the Order" with Rothman. While Rothman argues this is a non-event and consistent with his deposition testimony, the Court does not agree and finds that the fact Katz and Rothman discussed the *Acquinity* litigation, including the substance of his settlement, shows that Rothman had notice of the settlement. Even so, notwithstanding the above, the Court agrees with the FTC—adopting the reasoning advanced by Rothman would allow an individual who is aware of an order's existence to otherwise "maintain a studied ignorance of the terms of the decree in order to postpone compliance and preclude a finding of contempt." *United States v. Planes*, No. 8:18-cv-2726-T-23TGW, 2019 WL 3024895, at *8 (M.D. Fla. July 11, 2019). Instead, what is required in a contempt action is "knowledge of the mere existence of the injunction; not its precise terms." *FTC v. Neiswonger*, 494 F. Supp. 2d 1067, 1079 (E.D. Mo. 2007); *see also Gen. Motors Corp. v. Gibson Chem. & Oil Corp.*, 627 F. Supp. 678, 681-82 (E.D.N.Y. 1986) ("It is clear, however, that the knowledge required of a party in contempt is knowledge of the existence of the order . . . not knowledge of the particulars of that order.").

Therefore the Court finds that Levison and Rothman, but not Zangrillo had actual notice of the Katz settlement, sufficient to support a potential finding of contempt.

### c. Entity Defendants

On May 14, 2021, the Entity Defendants filed a motion in response to the FTC's February 12, 2020 motion for an order to show cause as to why Burton Katz and twelve Corporate Defendants in the *On Point Matter* should not be held in contempt. (ECF Nos. 158; 162; and 163.) However, this appears to ignore the Court's February 14, 2020 order which already required the Entity Defendants to show cause as to why they should not be held in contempt for violating the Katz settlement. These Entity Defendants neither sought reconsideration of the Court's prior order which has been in place for sixteen months and the Court declines to disturb this order with respect to the Entity Defendants. The Court's prior ruling, therefore, stands and the Entity Defendants must show cause as they were already required to do.

### d. Violation of the Order

As the Court found the FTC has not shown Zangrillo had notice of Katz's settlement, the Court will consider only whether the FTC has shown that there is clear and convincing evidence that Levison and Rothman violated the *Acquinity* order. Whether or not these individuals intended to violate the Katz settlement is irrelevant. Courts "do not focus on the subjective beliefs or intent of the alleged

contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *FTC v. Leshin*, 618 F.3d 1221, 1233 (11th Cir. 2010) (internal quotations omitted). "The only issue is compliance." *Id.* at 1232.

At its two-day long preliminary injunction hearing in the *On Point Matter*, the Court found the "Defendants have engaged in . . . acts or practices that violate Section 5(a) of the FTC Act . . . and that Plaintiff is therefore likely to prevail on the merits of this action." (ECF No. 126, at 2, *On Point Matter*.) This finding was based on "undercover purchases; consumer complaints and declarations; expert testing; corporate, banking, and payment processing records; and additional documents filed by the FTC" which showed the FTC would have a likelihood of success in showing that Defendants deceived consumers "by misrepresenting the services they offer, thus inducing consumers to pay money or divulge personal information under false pretenses" through "websites [that] were patently misleading." (*Id.*)

The evidence submitted by the FTC in connection with its motion for an order to show cause shows that, consistent with the Court's prior findings in the *On Point Matter*, that the Defendants have engaged in acts that appear to violate the Katz settlement in this action. The Court finds it is proper for Levison and Rothman to show cause why they should not be held in contempt for violating Katz's settlement with the FTC in *Acquinity* based on the Court's prior preliminary injunction hearing and the evidence submitted in connection with the briefing of this issue.

### B. Preliminary Injunction

Knowing that Katz, Levison, Rothman and the Entity Defendants (the "Contempt Defendants") will be required to show cause for potentially violating Katz's settlement with the FTC, the Court now turns to the FTC's request to enter a preliminary injunction with respect to the Contempt Defendants. The FTC states in its motion that it is moving in "this contempt matter to maintain the asset freeze to protect its ability to recover civil contempt compensatory relief, which remains available regardless of the Change in the interpretation of Section 13(b) of the FTC Act" by the Supreme Court in *AMG Capital Management, LLC v. FTC,* 141 S. Ct. 1341 (2021). In *AMG*, the Supreme Court found that "Section 13(b) does not authorize the award of equitable monetary relief." In response, and in light of *AMG*, the Contempt Defendants argue that the FTC's request for a preliminary injunction is "an impermissible end run around *AMG*"; that monetary contempt sanctions are unavailable to the FTC; that any potential order of monetary contempt must be limited to each individual's putative benefit; and that the balance of the equities favors denying the FTC's request. (ECF No. 160, at 15-20.)

The Court turns first to the Contempt Defendants' argument that the FTC's request for a preliminary injunction is an impermissible end-run around *AMG*. In response to this argument, the FTC concedes "it cannot now obtain monetary relief under Section 13(b), but continues to seek that relief on legally solid grounds: civil contempt." (ECF No. 168, at 10.) The Court agrees with the FTC that the FTC's tactical decision to change strategy in the wake of the *AMG* decision is not an impermissible "end-run" around a Supreme Court decision, but rather, is an attempt by the FTC to utilize another tool at its disposal to hold the Contempt Defendants accountable for allegedly violating Katz's settlement with the FTC, which they were aware of, in the *Acquinity* action.

Next, the Court turns to the Contempt Defendants' argument that monetary contempt sanctions are unavailable to the FTC. As an initial matter, the Court agrees with the FTC that generally speaking there remain certain avenues the FTC can pursue to obtain monetary remedies, including those pursuant to Section 19, 15 U.S.C. § 57b of the FTC Act, though the Court notes that is not the provision the FTC is proceeding under here. In an earlier decision in the *On Point Matter*, the Court noted that the bounds of any contempt sanctions would likely trace the bounds of Section 13(b), which the Contempt Defendants have described as an "admonishment," but the Court's statement should not be read as limiting the Court's authority to enter monetary sanctions where it is appropriate to do so. In *Leshin*, the Eleventh Circuit found it was not an abuse of discretion to order disgorgement of gross receipts upon a finding of contempt, and noted that the Tenth Circuit, Seventh Circuit, and Ninth Circuit are in accord with this approach. 618 F.3d at 1237. Indeed, the Eleventh Circuit noted that district courts are granted "wide discretion in fashioning an equitable remedy in civil contempt, which includes ordering disgorgement." *Id.*

In any event, contempt remedies are not limited by the bounds of the FTC Act, though Courts turn to statutes such as Section 13(b) prior to *AMG*, Section 19 of the FTC Act, or other similar statutes, which provide guidance to courts when they seek to craft an appropriate remedy in response to a finding of contempt. Indeed, in *McGregor v. Chierico*, the Eleventh Circuit noted that "the inherent equitable powers of the federal courts authorize the district court to order payment of consumer redress for injury caused by . . . contumacious conduct." 206 F.3d 1378, 1387 (11th Cir. 2000). Far from Section 13(b) limiting the Court's authority to utilize disgorgement as a remedy in fashioning a contempt remedy, the Eleventh Circuit noted that courts may find it useful to turn to "the remedy for [a] statutory violation" as instructive for a court where a court is seeking to craft a contempt sanction and the "contemptuous conduct is closely akin" to the statutory violation. *Id.* at 1387-88. It is not as if consumer redress is unavailable at all to the FTC, as consumer redress is still available under Section 19, which the Court could turn to as an alternative statutory basis

for guidance. *See AMG*, 141 S. Ct., at 1349 ("The Commission may obtain monetary relief by . . . invoking . . . § 19's redress provisions."). Regardless of whether the Court were to turn to Section 13(b) or Section 19 as guidance, district courts are not required to reference a statute when crafting contempt sanctions. *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1519 (11th Cir. 1990) (noting reference to Lanham Act as guide in structuring civil contempt sanctions was within the district court's "discretion."). Therefore, the Court disagrees that monetary remedies are unavailable to the FTC.

The Court turns now to the Contempt Defendants' argument that the Court's authority to issue an equitable monetary remedy is limited to disgorgement, not of net revenues on a joint and several basis. (ECF No. 160, at 19.) The Contempt Defendants state an award must be limited to the amount of each Contempt Defendants' purported benefit. (*Id.*) In response, the FTC argues that the Contempt Defendants' arguments ignore Supreme Court and Eleventh Circuit precedent.

As the basis for its argument, the Contempt Defendants argue that district courts may not utilize civil contempt power to impose a punitive or criminal contempt sanction, a concept which according to the Contempt Defendants the Supreme Court recently explored in, *Liu v. Securities and Exchange Commission*, 140 S. Ct. 1936 (2020). The Court, however, does not read *Liu* as broadly as the Contempt Defendants. In *Liu*, the Supreme Court cautioned courts from "test[ing] the bounds of equity practice" by, among other things, "ordering the proceeds of fraud to be deposited in Treasury funds instead of disbursing them to victims." *Id.* at 1946. The Court notes, however, that *Liu* was not decided in the context of a contempt proceeding, and is therefore distinguishable. While *Liu* did discuss principles of equity, as the Contempt Defendants note, the question the Supreme Court decided in *Liu* was "whether, and to what extent, the SEC may seek 'disgorgement' in the first instance through its power to award 'equitable relief' *under 15 U.S.C. § 78u(d)(5)*, a power that historically excludes punitive sanctions." *Id.* at 1940 (emphasis added). The answer to that question is that "a disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief *under § 78u(d)(5)*." *Id.* (emphasis added). As the Court noted in a prior decision in this matter, the Court cannot extrapolate holdings issued in one context, relief under § 78u(d)(5), to conclude that it should upend Circuit law in another context, contempt. *See FTC v. On Point Global, LLC*, No. 19-25046-Civ, 2020 WL 5819089, at *4 (S.D. Fla. Sept. 30, 2020) (Scola, J.). The Contempt Defendants point the Court's attention to *FTC v. Electric Payment Solutions of America Incorporated*, for the proposition that the Court should find that "*Liu* reached its conclusion by relying on equity jurisprudence *generally*, as opposed to relying on SEC jurisprudence *specifically*." 482 F. Supp. 3d 921, 928 (D. Az. 2020) (emphasis in original). However, what the Contempt Defendants omit and

what the *Electric Payment* court acknowledges is that "two district courts in [the Ninth Circuit] have reached the opposite conclusion, finding that *Liu* is inapplicable to a FTC proceeding." *Id.* at 929. This includes another court within the District of Arizona, where *Electric Payment* was decided. *See FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2020 WL 4530459, at *4-5 (D. Az. Aug. 6, 2020). The Court declines to adopt the broad reading of *Liu* as urged by the Contempt Defendants and therefore does not find persuasive the Contempt Defendants' arguments advanced pursuant to *Liu*.

Instead, Supreme Court and Eleventh Circuit precedent makes clear that in the context of contempt, district courts have the "power . . . to order" the payment of damages "caused by . . . violations of the decree" up to the "requirements of full remedial relief." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949). The Eleventh Circuit has also observed that district courts have "extremely broad and flexible powers" in the contempt context, limited only by the require that such contempt sanctions be "compensatory." *FTC v. Leshin*, 719 F.3d 1227, 1231 (11th Cir. 2013) (discussing *McComb*, 336 U.S. at 193). The Court, therefore, does not find the Contempt Defendants' arguments on this issue to be well taken.

Finally, the Court turns to the Contempt Defendants' arguments that the balance of equities does not favor an asset freeze in the *Acquinity* action. In support, they sate that the FTC will not suffer irreparable harm absent an asset freeze, the public interest is met by an injunction, and because the businesses at issue are successful, concerns regarding dissipation are unfounded.

In order to obtain preliminary injunctive relief, the FTC need not show irreparable harm. *University Health*, 938 F.2d at 1218. The operative questions, then, are whether the FTC is likely to succeed on the merits and whether the balance of the equities tilts in the Contempt Defendants' or FTC's favor. As the Court detailed in this order, and in its order granting preliminary injunction in the *On Point Matter*, the Court finds the FTC is likely to succeed on the merits by showing the Contempt Defendants' operation of "patently misleading" websites was in violation of Katz's settlement with the FTC prohibiting such conduct. Moreover, in light of the potential contempt of this Court's order, and given the conduct at issue in the *On Point Matter*, the Court finds that an asset freeze is appropriate as the equities weigh in favor of the FTC. The public interest is not against entry of a preliminary injunction as it is not in the public interest to allow the Contempt Defendants to make themselves immune from sanctions in spite of their contempt. *PNY Techs., Inc. v. Salhi*, No. CV 12-4916, 2016 WL 4267940, at *3 (D.N.J. Aug. 10, 2016). Finally, even if the FTC were required to prove irreparable harm, the Court finds the FTC would be able to do so because absent an asset freeze, the Contempt Defendants could dissipate their assets. *See FTC v. Simple Health Plans, LLC*, 379 F. Supp. 3d 1346, 1364 (S.D. Fla. 2019) (Gayles, J.).

### 4. Conclusion

In sum, the Court **grants** the FTC's motion for an order to show cause and requires the Contempt Defendants to show cause why they should not be held in contempt. (**ECF No. 137**.) The Court will hold a show cause hearing contemporaneously with trial, if any, in *FTC v. On Point Global, LLC, et al.*, No. 19-25046-Civ (S.D. Fla.) The Contempt Defendants shall appear before the Court on the day of the hearing to show cause to explain why this Court should not find them in civil contempt for failing to comply with the Court's Stipulated Final Judgment and Order for Permanent Injunction and Other Equitable Relief (ECF No. 132). If the Parties intend to rely on any evidence or witnesses at the hearing, they shall comply with the deadlines and obligations for pretrial disclosures and joint stipulation as set forth in the *On Point Matter*.

The Court also **grants** the FTC's request that the court enter a preliminary injunction. (**ECF No. 138**.) The Court will enter a preliminary injunction with regards to the Contempt Defendants under separate order.

The Court also understands that the FTC seeks to undertake summary contempt briefing with regards to the Contempt Defendants. The Court **grants** the FTC's request to set a briefing schedule for summary contempt proceedings. (**ECF No. 170**.) The FTC must file its initial motion by **August 27, 2021**. Oppositions are due **September 10, 2021**, and a reply, if any is due by **September 17, 2021**. The Court reminds the parties of its practice, that in cases with multiple plaintiffs or defendants, the parties must file **joint motions and consolidated responses and replies** unless there are clear conflicts of position. If conflicts of position exist, the parties must explain the conflicts in their separate filings.

Finally, the Court denies Robert Zangrillo, Dragon Global LLC, Dragon Global Management LLC, and Dragon Global Holdings LLC's request for oral argument on the issue of whether the FTC can use "contempt proceedings as an end-run around *AMG Capital*" (ECF No. 163, at 30) for the reasons set forth in this order.

**Done and ordered** in chambers, at Miami, Florida, on August 13, 2021.

_____
Robert N. Scola, Jr.
United States District Judge