United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Federal Trade Commission, Plaintiff ) <br> ) <br> v. ) <br> ) <br> Acquinity Interactive, LLC, and ) <br> others, Defendants ) | Civil Action No. 14-60166-Civ-Scola |

## Amended Preliminary Injunction

This matter is before the Court upon the Contempt Defendants' unopposed motion to modify preliminary injunction. The Court has reviewed the Contempt Defendants' motion, and **grants** the relief sought. (**ECF No. 176**.) The Court modifies the preliminary injunction (ECF No. 175) previously entered, as set forth below.

## Background

On October 16, 2014, the Court entered a Stipulated Order for Permanent Injunction and Other Equitable Relief as to Defendants Burton Katz and Jonathan Smyth (the "2014 Order"). The 2014 Order resolved the case filed by the Federal Trade Commission ("FTC") as to Defendant Burton Katz. The 2014 Order provided that Katz, along with his "officers, agents, servants, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly," in "connection with the advertising, marketing, promotion, offering for sale, sale, or distribution of any product or service," are "permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, any false or misleading material misrepresentation. (ECF No. 132, at 3.)

In December 2019, the FTC filed a separate complaint against the Contempt Defendants and others, alleging their deceptive websites violated Section 5 of the FTC Act. The case is styled *FTC v. On Point Global LLC, et al.*, 19-25046-Civ (S.D. Fla.) (the "*On Point Matter*"). In the *On Point Matter*, the FTC concurrently sought a temporary restraining order, including an asset freeze. The Court granted the FTC's request for a temporary restraining order on December 13, 2019, freezing the Contempt Defendants' assets. The FTC noted in its initial filings in the *On Point Matter* that the complaint in *FTC v. On Point Global* was related to this matter, that the FTC intended to file a motion for contempt in this matter, and that the factual and legal issues in the two cases overlapped. (*On Point Matter*, ECF No. 5.)

On January 14, 2020, following a two-day evidentiary hearing on the FTC's motion for a Preliminary Injunction in the *On Point Matter*, the Court entered a Preliminary Injunction, which continued the freeze on the Contempt Defendants' assets.

In February 2020, the FTC moved for an order to show cause why Burton Katz and the Corporate Contempt Defendants should not be held in contempt for their violations of the 2014 Order (the "First Contempt Motion"), seeking civil contempt compensatory remedies for those violations. In April 2021, the FTC moved for an order to show cause why Robert Zangrillo, Brent Levison, and Elisha Rothman should not be held in contempt for their violations of the 2014 Order (the "Second Contempt Motion"), which sought the same civil contempt compensatory remedies against those defendants. With the April 2021, motion, the FTC filed a motion for a temporary restraining order freezing the Contempt Defendants' Assets (the "TRO Motion").

## **Findings of Fact**

The Court, having considered the TRO Motion, First Contempt Motion, Second Contempt Motion, declarations, exhibits, and the memorandum of points and authorities filed in support thereof[1]; having heard testimony and reviewed evidence concerning the business practices of the Contempt Defendants during the two-day preliminary injunction hearing in the *On Point Matter*; and being otherwise fully advised, finds that:

   A. The Court has jurisdiction over this matter for all purposes as provided in Section XI (Retention of Jurisdiction) of the 2014 Order.

   B. The 2014 Order is lawful, valid, and unambiguous.

   C. There is good cause to believe the Contempt Defendants has actual notice of the 2014 Order and the ability to comply with it.

   D. There is good cause to believe that the Contempt Defendants have engaged in acts or practices that violate Section II of the 2014 Order, and that the Plaintiff is therefore likely to prevail on the merits of this action. As the Court previously ruled on January 14, 2020, following a two-day evidentiary hearing during which the Contempt Defendants were represented by counsel, the Plaintiff demonstrated by the records of undercover purchases; consumer complaints and declarations; expert testing; corporate, banking, and payment processing records; and additional documents filed by the FTC, the FTC has established a likelihood of success in showing that Contempt Defendants, with

---

[1] "At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." *Levi Strauss and Co. b. Sunrise Intern. Trading*, 51 F.3d 982 (11th Cir. 1995).

knowledge of the 2014 Order, have made, or assisted others in making, expressly by implication, false or misleading material representations. The Contempt Defendants deceived consumers by misrepresenting the services they offer, thus inducing consumers to pay money or divulge personal information under false pretenses. The Court need not, as a matter of law, depend on a consumer survey to prove that the websites had a tendency to deceive. *FTC v. Brown & Williamson Tobacco Corp.*, 778 F.2d 35, 40-41 (D.C. Cir. 1985) ("Evidence of consumer reaction usually takes the form of market research or consumer surveys, but a trial court may accord other forms of evidence substantial weight if that evidence appears reliable."). Although the consumer surveys presented in this case by the FTC had some minor flaws, the results clearly show that consumers were misled by the websites. And, thus independent evidence is unnecessary in this case. The Court finds that the websites were patently misleading. The websites were cleverly designed so that even though disclosures appeared on many or most of the pages, consumers' attention would be drawn to links and language in larger, more colorful font that directed them to the service they were seeking (such as renewing a driver's license) and most consumers would likely ignore the disclosures written in relatively smaller and pale-colored font. And, if a consumer did read the disclosures, they would learn they could purchase a guide and would also learn that the site is a privately-owned company selling guides that can be obtained for free elsewhere on governmental sites. But, most importantly, they were not clearly informed that they could not obtain the government service they were misled to believe was available to them.

    E.  There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective full compensatory contempt relief will occur from the sale, transfer, destruction or other disposition or concealment by Contempt Defendants of their assets or records, unless Contempt Defendants are immediately restrained and enjoined by order of this Court.

    F.  There is good cause to believe that a reasonable approximation of the total consumer loss caused by the Contempt Defendants' violation of the 2014 Order, which represents the full compensatory relief, equals $104,723,274.62.

    G.  Good cause exists for freezing the Contempt Defendants' Assets.

    H.  Weighing the equities and considering the Plaintiff's likelihood of ultimate success on the merits, a preliminary injunction with an asset freeze is in the public interest.

    I.  This Court has authority to issue this Order pursuant to its own inherent authority, *see United States v. United Mine Workers of America*, 300 U.S. 258, 290, 301 (1947), and the All Writs Act, 28 U.S.C. § 1651.

J. No security is required of any agency of the United States for Issuance of a t preliminary injunction. Fed. R. Civ. P. 65(c).

## **Definitions**

For the purposes of this Order, the following definitions shall apply:

A. **Asset"** means any legal or equitable interest in, right to, or claim to, any property, where located and by whomever held.

B. **"Corporate Contempt Defendant"** means On Point Global LLC; On Point Employment LLC; On Point Guides LLC f/k/a Rogue Media Services LLC; DG DMV LLC; Waltham Technologies LLC; Cambridge Media Series LLC f/k/a License America Media Series LLC; Issue Based Media LLC; Dragon Global LLC; Dragon Global Management LLC; Dragon Global Holdings LLC; Direct Market LLC; Bronco Family Holdings LP a/k/a Bronco Holdings Family LP; and each of their subsidiaries, affiliates, successors, and assigns.

C. **"Contempt Defendant(s)"** means the Corporate Contempt Defendants and Individual Contempt Defendants, individually, collectively, or in any combination.

D. **"Document"** is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including e-mail and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

E. **"Electronic Data Host"** means any person or entity in the business of storing, hosting, or otherwise maintaining electronically stored information. This includes, but is not limited to, any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

F. **"Individual Contempt Defendant(s)"** means Burton Katz, Brent Levison, and Elisha Rothman, individually, collectively, or in any combination.

G. **"Receiver"** means Melanie Damian, as the Receiver in the On Point Matter, and any deputy receivers she names.

## **Order**

### I.   **Asset Freeze**

**It is further ordered** that the Contempt Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who received actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A.  Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Assets that are:

1. owned or controlled, directly or indirectly, by any Contempt Defendant;
2. held, in part or in whole, for the benefit of any Contempt Defendant; or
3. owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Contempt Defendant.

B.  Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Contempt Defendant or subject to access by any Contempt Defendant, except as necessary to comply with written requests from the Receiver acting pursuant to its authority in the On Point Matter;

C.  Incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of any Corporate Contempt Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Contempt Defendant or of which any Contempt Defendant is an officer, director, member, or manager. This includes any corporate bankcard or corporate credit card account for which any Contempt Defendant is, or was on the date that this Order was signed, an authorized signor; and

D.  Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Contempt Defendant.

The Assets affected by this Section shall include: (1) all Assets of Contempt Defendants as of December 13, 2019; and (2) Assets obtained by Contempt Defendants after December 13, 2019, if those Assets are derived from any activity that is the subject of or that is prohibited by this Order. This

Section does not prohibit any transfers to the Receiver or repatriation of foreign Assets specifically required by this order.

## II. Duties of Asset Holders and Other Third Parties

**It is further ordered** that any financial or brokerage institution, Electronic Data Host, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor, payment gateway, insurance company, business entity, or person who receives actual notice of this Order (by service or otherwise) that:

(a) has held, controlled, or maintained custody, through an account or otherwise, of any Document on behalf of any Contempt Defendant or any Asset that has been owned or controlled, directly or indirectly, by any Contempt Defendant; held, in part or in whole, for the benefit of any Contempt Defendant; in the actual or constructive possession of any Contempt Defendant; or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Contempt Defendant;

(b) has held, controlled, or maintained custody, through an account or otherwise, of any Document or Asset associated with credits, debits, or charges made on behalf of any Contempt Defendant, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities; or

(c) has extended credit to any Contempt Defendant, including through a credit card, shall:

A. Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such Document or Asset, as well as all Documents or other property related to such Assets, except by further order of this Court; provided, however, that this provision does not prohibit an Individual Contempt Defendant from incurring charges on a personal credit card established prior to entry of this Order, up to the pre-existing credit limit;

B. Deny any person, except the Receiver, access to any safe deposit box, commercial mail box, or storage facility that is titled in the name of any Contempt Defendant, either individually or jointly, or otherwise subject to access by any Contempt Defendant;

C. Provide Plaintiff's counsel and the Receiver, within three (3) days of receiving a copy of this Order, a sworn statement setting forth, for each Asset or account covered by this Section:
1. The identification number of each such account or Asset;
2. The balance of each such account, or a description of the nature and value of each such Asset as of the close of business on the day on which this Order is served, and, if the account or other Asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other Asset was remitted; and
3. The identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Contempt Defendant, or is otherwise subject to access by any Contempt Defendant.

D. Upon the request of Plaintiff's counsel or the Receiver, promptly provide Plaintiff's counsel and the Receiver with copies of all records or other Documents pertaining to any account covered by this Section or Asset, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities.

Provided, however, that this Section does not prohibit any transfers to the Receiver or repatriation of foreign Assets specifically required by this Order.

### III.     Foreign Asset Repatriation

**It is further ordered** that within five (5) days following the service of this Order, each Contempt Defendant shall:

A. To the extent not already completed, provide Plaintiff's counsel and the Receiver with a full accounting, verified under oath and accurate as of the date of this Order, of all Assets, Documents, and accounts outside of the United States which are: (1) titled in the name, individually or jointly, of any Contempt Defendant; (2) held by any person or entity for the benefit of any Contempt Defendant or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

B. To the extent not already completed, take all steps necessary to provide Plaintiff's counsel and Receiver access to all Documents and records that may be held by third parties located outside of the territorial United States of America, including signing the Consent to Release of Financial Records appended to this Order as **Attachment A**;

C. Transfer to the territory of the United States all Documents and Assets located in foreign countries which are: (1) titled in the name, individually or jointly, of any Contempt Defendant; (2) held by any person or entity for the benefit of any Contempt Defendant or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Contempt Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Contempt Defendant; and

D. The same business day as any repatriation, (1) notify the Receiver and counsel for Plaintiff of the name and location of the financial institution or other entity that is the recipient of such Documents or Assets; and (2) serve this Order on any such financial institution or other entity.

### IV. Non-Interference With Repatriation

**It is further ordered** that Contempt Defendants, Contempt Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by this Order, including, but not limited to:

A. Sending any communication or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Contempt Defendants' Assets have been fully repatriated pursuant to this Order; or

B. Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Contempt Defendants' Assets have been fully repatriated pursuant to this Order.

### V. **Consumer Credit Reports**

**It is further ordered** that Plaintiff may obtain credit reports concerning any Contempt Defendants pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. 12 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to Plaintiff.

### VI. **Preservation of Records**

**It is further ordered** that Contempt Defendants, Contempt Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

   A. Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that relate to: (1) the business, business practices, Assets, telephone records, email account records, or business or personal finances of any Contempt Defendant; (2) any webpage or website operated, in whole or in part, on any Contempt Defendant's or Contempt Defendants' behalf; (3) any electronic communications sent or received by Contempt Defendants; (4) the business practices or finances of entities directly or indirectly under the control of any Contempt Defendant; or (5) the business practices or finances of entities directly or indirectly under common control with any other Contempt Defendant; and

   B. Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Contempt Defendants' incomes, disbursements, transactions, and use of Contempt Defendants' Assets.

### VII. **Non-Interference With The Receiver's Rights, Duties, and Obligations in the *On Point Matter***

**It is further ordered** that this Order does not affect, alter, or limit any right, duty, or obligation of Melanie Damian, as the Receiver in the On Point Matter, who was appointed as the Receiver in the preliminary injunction in the *On Point Matter*. (*On Point Matter*, ECF No. 126.)

### VIII. **Stay of Actions**

**It is further ordered** that, except by leave of this Court, during the pendency of the receivership ordered herein, Contempt Defendants, Contempt Defendants' officers, agents, employees, attorneys, and all other persons in

active concert or participation with any of them, who receive actual notice of this Order, and their corporations, subsidiaries, divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Contempt Defendants, and all others acting for or on behalf of such persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of the Contempt Defendants, including, but not limited to:

    A. Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, or of any similar insolvency proceeding on behalf of the Contempt Defendants;

    B. Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Contempt Defendants, including the issuance or employment of process against the Contempt Defendants, except that such actions may be commenced if necessary to toll any applicable statute of limitations; or

    C. Filing or enforcing any lien on any asset of the Corporate Contempt Defendants, taking or attempting to take possession, custody, or control of any Asset of the Corporate Contempt Defendants; or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Corporate Contempt Defendants, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise.

        Provided, however, that this Order does not stay: (1) the commencement or continuation of a criminal action or proceeding; (2) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (3) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

### IX.   Service of this Order

    **It is further ordered** that copies of this Order as well as the Motion for temporary restraining order, which the Court construed as a motion for preliminary injunction, and all other pleadings, Documents, and exhibits filed contemporaneously with that Motion, may be served by any means, including facsimile transmission, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiff, by any law enforcement agency, or by private process server, upon any Contempt Defendant or any person (including any financial institution) that may have possession, custody or control of any Asset or Document of any

Contempt Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure. For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity.

### X.     Correspondence and Service on Plaintiff

**It is further ordered** that, for the purpose of this Order, all correspondence and service of pleadings on Plaintiff shall be addressed to:

> Sarah Waldrop, counsel for Plaintiff Federal Trade Commission
> 600 Pennsylvania Ave. NW, Mailstop CC-9528
> Washington, DC 20580
> (202) 326-3444 (tel.)
> (202) 326-3197 (fax)
> swaldrop@ftc.gov

### XI.    Retention of Jurisdiction

**It is further ordered** that this Court shall retain jurisdiction of this matter for all purposes.

**Done and ordered** at Miami, Florida on August 18, 2021.

_____
Robert N. Scola, Jr.
United States District Judge

# Attachment A

Consent to Release of Financial Records

     I, _____of _____, (City, State), do hereby direct any bank, saving and loan association, credit union, depository institution, finance company, commercial lending company, credit card processor, credit card processing entity, automated clearing house, network transaction processor, bank debit processing entity, automated clearing house, network transaction processor, bank debit processing entity, brokerage house, escrow agent, money market or mutual fund, title company, commodity trading company, trustee, or person that holds, controls, or maintains custody of assets, wherever located, that are owned or controlled by me or at which there is an account of any kind upon which I am authorized to draw, and its officers, employees, and agents, to disclose all information and deliver copies of all documents of every nature in its possession or control which relate to the said accounts to any attorney of the Federal Trade Commission, and to give evidence relevant thereto, in the matter of **FTC v. Acquinity Interactive, LLC, et al.**, now pending in the United States District Court for the Southern District of Florida, and this shall be irrevocable authority for so doing.

     This direction is intended to apply to the laws of countries other than the United States of America which restrict or prohibit disclosure of bank or other financial information without the consent of the holder of the account, and shall be construed as consent with respect hereto, and the same shall apply to any of the accounts for which I may be a relevant principal.

Dated:_____        Signature:_____

                                          Printed Name:_____